UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**UNIVERSITY SPINE CENTER,**
*on assignment of Steven C.*,

                      **Plaintiff,**

      v.

**ANTHEM BLUE CROSS BLUE SHEILD
and JOHN DOE,** *being a fictitious name for
the Plan Administrator whose identity is
presently unknown*,

                      **Defendants.**

Civil Action No. 18-2912 (ES) (CLW)

OPINION

**SALAS, DISTRICT JUDGE**

      Before the Court is Defendant Anthem Blue Cross Blue Shield's ("Anthem") motion to dismiss Plaintiff University Spine Center's ("Plaintiff") Complaint. (D.E. No. 7). The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. The Court has reviewed the parties' submissions[1] and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b). For the reasons stated below, Anthem's motion to dismiss is GRANTED and Plaintiff's Complaint is DISMISSED *with prejudice*.

**I.**     **Background[2]**

      On April 16, 2012, Plaintiff provided medically necessary and reasonable services to Steven C. (the "Patient"). (Compl. ¶ 6). Plaintiff alleges it obtained an assignment of benefits

---

[1]     (D.E. No. 1, Complaint ("Compl."); D.E. No. 7-1 ("Defs.' Mov. Br."); D.E. No. 9 ("Pl.'s Opp. Br."); D.E. No. 10 ("Defs.' Reply Br.")).

[2]     This background is derived from Plaintiff's Complaint, which the Court must accept as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

("AOB") from the Patient to bring this claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002, *et seq*. (*Id.* ¶ 8). Plaintiff asserts that, pursuant to the AOB, it prepared Health Insurance Claim Forms formally demanding reimbursement from Anthem in the amount of $225,400 for the medical services provided to the Patient. (*Id.* ¶ 10). However, Plaintiff alleges that Anthem only allowed reimbursement totaling $7,303.71 for the Patient's treatment. (*Id.* ¶ 11). Thereafter, Plaintiff engaged in the applicable administrative appeals process maintained by Anthem to recover the additional payment and request a copy of the Summary Plan Description ("SPD"). (*Id* ¶¶ 12–14). Anthem failed to remit additional payment in response to Plaintiff's appeal and also failed to produce the SPD. (*Id.* ¶¶ 13 & 15). Taking into account any known deductions, copayments, and coinsurance, Plaintiff claims it was underpaid by $129,520.29. (*Id*. ¶ 17). Accordingly, on February 28, 2018, Plaintiff commenced this action alleging failure to make all payments pursuant to the Patient's plan under 29 U.S.C. § 1132(a)(1)(B) (Count I); breach of fiduciary duty under 29 U.S.C. §§ 1132(a)(3), 1104(a)(1), and 1105(a) (Count II); and failure to provide the requested SPD in violation of 29 U.S.C. § 1024 (Count III). (*Id.* ¶¶ 19–41).

**II.     Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss a complaint if it lacks subject matter jurisdiction. "Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015). However, when statutory limitations to sue are non-jurisdictional, as is the case where a party claims derivative standing to sue under ERISA § 502(a), a motion to dismiss challenging such standing is "properly filed under Rule 12(b)(6)." *Id.* Regardless, "a motion for lack of statutory standing is effectively the same whether it comes under Rule 12(b)(1) or 12(b)(6)." *Id.* (citation omitted).

On a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)). "For the purpose of determining standing, [the Court] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Where, as here, a plaintiff's claims are based on a health benefits plan that it is referenced in a complaint, a court may consider the plan documents without converting a motion to dismiss into a motion for summary judgment. *See Kayal Orthopedics Ctr., P.C. v. Empire Blue Cross Blue Shield*, No. 16-9059, 2017 WL 4179813, at *3 (D.N.J. Sept. 21, 2017); *Briglia v. Horizon Healthcare Servs., Inc.*, No 03-6033, 2005 WL 1140687, at *3 (D.N.J. May 13, 2005). Here, the Complaint relies on the terms of the Patient's health benefits plan. (Compl. ¶¶ 4–5 & 24).

## III. Discussion

The parties agree that this case is governed by ERISA. (Defs.' Mov. Br. at 1; Pl.'s Opp. Br. at 1). Under § 502(a) of ERISA, "a participant or beneficiary" may bring a civil action to, among other things, "recover benefits due to him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Accordingly, standing to sue under ERISA is "limited to participants and beneficiaries." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 338 F.3d 393, 400–01 (3d Cir. 2004) (holding that if a plaintiff lacks standing to sue under ERISA, then the court also lacks federal subject-matter jurisdiction to hear the claim). As ERISA is silent on the issue of standing, Third Circuit

3

precedent sets forth that a healthcare provider may bring a cause of action by acquiring derivative standing through an assignment of rights from the plan participant or beneficiary to the healthcare provider. *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372. "Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary." *Id.* (citing *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014)). But even though a medical provider may obtain such an assignment, an employment-based health plan is authorized to bar the assignment of such rights to a medical provider by including an anti-assignment clause in its terms. *See Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018).

Thus, the issue here hinges on whether the Patient successfully assigned her rights to Plaintiff under the terms of Anthem's health benefits plan. Anthem argues, in part, that "Plaintiff cannot demonstrate it has standing through a valid AOB from the Patient because, as a matter of law, any AOB is legally unenforceable and void due to the anti-assignment provision contained in the Patient's Plan." (Defs.' Mov. Br. at 11). The anti-assignment provision at issue appears in the Medical Benefit Booklet ("Medical Booklet") which states in relevant part:

> You authorize the Claims Administrator, on behalf of the Company, to make payments directly to providers for Covered Services. The Claims Administrator also reserves the right to make payments directly to You. Payments may also be made to, and notice regarding the receipt and/or adjudication of claims, an alternate recipient, or that person's custodial parent or designated representative. Any payments made by the Claims Administrator will discharge the Company's obligation to pay for Covered Services. You cannot assign Your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support order" as defined by ERISA or any applicable Federal law.
>
> Once a provider performs a Covered Service, the Claims Administrator will not honor a request to withhold payment of the claims submitted.
>
> The coverage and any benefits under the Plan are not assignable by any Member without the written consent of the Plan, except as provided above.

(D.E. No. 9-2, Exhibit A at 36 (ECF pagination)). Relying on this provision, Anthem argues that "Plaintiff's Complaint should be dismissed with prejudice as Plaintiff lacks standing to assert any claims in the Complaint." (Defs.' Mov. Br. at 14).

In opposition, Plaintiff first argues that the anti-assignment provision is unenforceable because it is not clear and unambiguous. (Pl's. Opp. Br. at 16). Plaintiff avers that the anti-assignment provision "was never intended to prevent medical providers from receiving assignment from their patients" but rather, the provision was "aimed at preventing the assignment of coverage under the Plan to a third party." (*Id.* at 16). Plaintiff relies on the first sentence of the provision, which permits the "Claim Administrator" (Anthem) to make payments directly to providers. (*Id.* at 16–17). Plaintiff reasons that because the third paragraph states that "coverage and any benefits under the Plan are not assignable," but does not specifically prohibits "payments," it must follow that the provision does not prevent the assignment of the right to collect payments. (*Id.* at 17).

This argument is meritless. The first two sentences of the provision in question simply state is that the Claims Administrator reserves the discretion to either make payments directly to the medical providers or to make payments to the Patient for the Covered Services. This does not mean that the anti-assignment provision does not apply to providers or is waived. *See, e.g.*, *Arash Emami, MD, PC v. Quinteles IMS*, No. 17-3069, 2017 WL 4220329, at *3 (D.N.J. Sept. 21, 2017). Plaintiff also ignores the last sentence of the first paragraph which specifically states, "***You [Patient] cannot assign Your right to receive payment to anyone else*** . . . ." (D.E. No. 9-2, Ex. A at 36 (ECF pagination) (emphasis added)). Finally, even in the absence of this provision, Plaintiff does not explain how a payment for a Covered Service is not considered part of the "coverage" or "benefits under the Plan" and is therefore not subject to the anti-assignment provision in the last paragraph. Consequently, the Court finds no ambiguity. *See, e.g.*, *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *5 (D.N.J.

5

Mar. 22, 2018) ("Contrary to the [plaintiff's] argument, however, the clear and unambiguous language of the anti-assignment provision provides that although the "*Claims Administrator* [Anthem]" is authorized to make payments directly to the Providers, "*You* [the Patient] *cannot assign Your right to receive payment to anyone else*, except as required by a 'Qualified Medical Child Support Order' as defined by ERISA or any applicable Federal law.") (emphasis is original).

Plaintiff next argues that even if the provision in the Medical Booklet is not ambiguous, it conflicts with the assignment provision in the Eligibility and Administrative Rules Booklet ("Rules Booklet"). The Rules Booklet states in relevant part:

> *Most benefits* payable under the separate benefit programs may be assigned to the provider of services or supplies at your option. Payments made in accordance with an assignment are made in good faith and discharge the plan's obligation to the extent of the payment. The claims administrator also may honor benefit assignments made prior to your death in relation to the remaining benefits payable by the plan. Any payment made by the plan in accordance with this provision will fully release the plan of its liability to you.

(D.E. No. 9-2, Ex. A at 117 (ECF pagination) (emphasis added)). At first glance, it would appear that this provision is in direct conflict with the anti-assignment provision in the Medical Booklet. A closer look, however, reveals that this is not the case.

While the Rules Booklet governs a wide variety of benefits programs, its own terms state that it is intended to provide "information about who is eligible to participate in this program[,] information on enrollment procedures and when coverage begins, ends and continues[, and] also includes sections on Coordination of Benefits and other administrative information and procedures." (D.E. No. 9-2, Ex. A at 78 (ECF pagination)). The Rules Booklet also states that "[s]eparate booklets describe various available benefit programs and the plan's claims review procedures." (*Id.*). Critically, the assignment language in the Rules Booklet only states that "*Most*," not all benefits, may be assigned—a key distinction. Based on this language, it must follow that the Rules Booklet's broad assignment provision may be constrained by what the other

6

booklets—which "describe various available benefit programs," such as the Medical Booklet—indicate.

In the case of health care benefits, the Medical Booklet specifically indicates that "*health care services* are subject to the limitations, exclusions, Copayments, Deductible, and Coinsurance requirements specified in *this* Benefit Booklet." (D.E. No. 9-2, Ex. A at 4 (ECF pagination) (emphasis added)). Additionally, the Medical Booklet states that "[a]ny Medical Booklet, Managed Mental Health Program booklet or certificate which You received previously describing Your medical benefits or Your mental health benefits . . . will be replaced *by this* Benefit Booklet." (*Id.* (emphasis added)). Thus, when the two booklets are read in conjunction it becomes evident that no conflict exists but rather, the terms outlined in the Medical Booklet, including the anti-assignment provision, are meant to control in the area of health care benefits over the more general terms outlined by the Rules Booklet. As a result, Plaintiff's argument fails.[3]

Plaintiff next argues that it is not barred from bringing this action because the anti-assignment clause limits only the Patient's *right* to assign his rights or benefits to Plaintiff, not the Patient's *power* to do so. (Pl.'s Opp. Br. at 19–20). According to Plaintiff, the anti-assignment clause's limit on the Patient's *right* to assign his rights or benefits to Plaintiff is essentially "a covenant not to assign" and any violation by the Patient can be remedied by money damages, but a violation of that covenant does not void the purported assignment. (*Id.* at 19). Plaintiff asserts that to limit a party's *power* to assign, an anti-assignment provision must sufficiently "manifest an

---

[3] Plaintiff also appears to argue that Anthem cannot rely on the SPD because of the possibility that "critical conflicts" may exist which cannot be clarified at this time since Anthem has not provided the "official Plan documents." (*See* Pl.s Opp. Br. at 3 & 9). This argument holds no water: first because Plaintiff has provided no allegations or legitimate reason to reasonably infer that such a conflict actually exists; and second because courts in this district have relied on the provisions contained in the SPD since it is an official plan document. *See Univ. Spine Ctr. o/a/o Edward C*, 2018 WL 2357756, at *2 n.1 (using similar plan language to conclude that Plaintiff's argument regarding Anthem's erroneous reliance on the SPD was meritless); (*see also* D.E. No. 9-2, Ex. A at 78 (ECF pagination) ("All of the booklets together, plus any summaries of material modifications (SMMs) to the information in the booklets, constitute the summary plan description (SPD) for the plan. *The SPD is one of the official plan documents*.") (emphasis added)).

7

intent" to limit the party's *power* to assign. (*Id.*). Plaintiff explains that the only way the Patient could be prevented from assigning his rights or benefits to Plaintiff is if the anti-assignment clause expressly limits the patient's power to do so with language specifying that any attempt to assign would be "'void' or 'invalid' or that the assignee shall acquire no rights or the nonassigning party shall not recognize any such assignment." (*Id.* at 19–20). Plaintiff argues the anti-assignment clause is invalid because it does contain this specific language. (*Id.*). In support of this argument, Plaintiff relies on a Third Circuit case that does not pertain to ERISA and applies New Jersey law. (*See id.* (citing *Bel-Ray Co., Inc. v. Chemrite (PTY) Ltd.*, 181 F.3d 435 (3d Cir. 1999)).

Plaintiff ignores[4] that "a majority of circuits, as well as courts in the Third Circuit have given effect to anti-assignment provisions such as the one in this case and denied standing." *See Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-13654, 2018 WL 1757027, at *3 (D.N.J. Apr. 12, 2018) ("Therefore, a clear and unambiguous anti-assignment clause is enforceable against Plaintiff and will void any purported assignment of Patient's rights or benefits."); *Am. Orthopedic & Sports Med.*, 890 F.3d at 453 ("We now join that consensus and hold that anti-assignment clauses in

---

[4] For context, the Court notes that Plaintiff has brought over seventy similar cases in this District, all against health insurance providers and often containing largely the same "prolific boilerplate filings." *See Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of New Jersey*, No. 16-8021, 2018 WL 2134060, at *2, n.2 (D.N.J. May 9, 2018). In each suit, Plaintiff alleges an assignment of rights and raises ERISA claims for failure to properly reimburse procedures it performed. *Id.* Plaintiff has raised the same argument as here several times. Each time Plaintiff has met the same response by our District, including in an opinion by Chief Judge Linares published **over a month** before Plaintiff filed its opposition brief in this case. *See Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-13654, 2018 WL 1757027, at *3 (D.N.J. Apr. 12, 2018) (rejecting Plaintiff's identical argument and collecting cases for the proposition that under ERISA anti-assignment provisions like the one here "will void any purported assignment of Patient's rights or benefits."). On May 21, 2018, Plaintiff filed its opposition brief here raising the same argument, yet Plaintiff did not cite or distinguish the Chief Judge's opinion or any of the cases cited by it.

The high volume of filings and the apparent "copy-paste" nature of many of the arguments across the various cases might give rise to the appearance of a willingness to litigate without regard to the substantive merits of the claims, thereby wasting not only the various defendants' but the courts' very limited resources and time. Such a situation is highly problematic, to say the least. That is not to say, however, that this Court thinks these lawsuits, including the present one, are frivolous. After all, our legal system encourages the advancement of colorable arguments to extend or modify the law. Rather, the Court would like to encourage Plaintiff to be a bit more mindful of existing and directly relevant case law when raising such arguments. Applying an ostrich strategy to litigation will rarely, if ever, carry the day.

8

ERISA-governed health insurance plans as a general matter are enforceable."). Particularly relevant, the anti-assignment clause in *Am. Orthopedic & Sports Med.* read: "[t]he right of a Member to receive benefit payments under this Program is personal to the Member and is not assignable in whole or in part to any person, Hospital, or other entity[.]" *Id.* at 448. "The anti-assignment clause in *American Orthopedic* also did not contain the words 'void' or 'invalid,' and yet the Third Circuit still determined that the clause was enforceable and that [the] plaintiff, therefore, lacked standing to sue." *Univ. Spine Ctr. o/a/o Edward C. v. Anthem Blue Cross Blue Shield*, No. 18-1103, 2018 WL 2357756, at *3 (D.N.J. May 24, 2018) (rejecting the same argument raised by Plaintiff here and finding that substantially similar anti-assignment provision deprived the same Plaintiff of standing); *see also Univ. Spine Ctr. v. Aetna, Inc.*, No. 18-2823, 2018 WL 3873240, at *2 (D.N.J. Aug. 15, 2018) ("Incredibly, it appears that Plaintiff's counsel copied verbatim large portions of another opposition brief that it filed in a similarly situated case before this Court a mere three months ago and regurgitated that same argument here."); *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-7823, 2018 WL 2332226, at *3 (D.N.J. May 23, 2018); *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-13654, 2018 WL 1757027, at *3 (D.N.J. Apr. 12, 2018).

It is thus "well-settled law in the District of New Jersey that the type of Anti–Assignmnent Clause used by the Plan in this case is valid and enforceable." *See Arash Emami, MD, PC*, 2017 WL 4220329, at *2 (collecting cases and finding that the plaintiff lacked standing because a similar anti-assignment provision was "clear and unambiguous" and "valid and enforceable"); *Kayal Orthopaedic Ctr., P.C. v. Empire Blue Cross Blue Shield*, No. 16-9059, 2017 WL 4179813, at *3 (D.N.J. Sept. 21, 2017) (same); *Specialty Surgery of Middletown v. Aetna*, No. 12-4429, 2014 WL 2861311, at *4 (D.N.J. June 24, 2014) (same); *Neurological Surgery Assocs. P.A. v. Aetna Life Ins. Co.*, No. 12-5600, 2014 WL 2510555, at *2–4 (D.N.J. June 4, 2014) (finding that "a provision

9

requiring that coverage may be assigned only with Defendant's consent" is "valid and enforceable" and therefore deprived the plaintiff of standing).

Tellingly, Plaintiff avoids any citation to, and makes no effort to distinguish, the voluminous case law finding that substantially similar anti-assignment provisions void the assignment in the context of ERISA. (*See* generally Pl.'s Opp. Br.); *see supra* note 4. Instead, Plaintiff points the Court to cases like *Bel-Ray Co., Inc.* But these cases neither address ERISA claims nor apply federal law, and are thus far from "controlling" in light of the substantial ERISA jurisprudence that has developed not just within the Third Circuit, but throughout the country. *See e.g.*, *Am. Orthopedic & Sports Med.*, 890 F.3d at 453 ("We now join that consensus and hold that anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable."); *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1296 (11th Cir. 2004) ("[A]n unambiguous anti-assignment provision in an ERISA-govemed welfare benefit plan is valid and enforceable."); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal–Mart Stores, Inc.*, 298 F.3d 348, 353 (5th Cir. 2002) (reversing the district court and holding that anti-assignment clause in ERISA plan was enforceable); *City of Hope Nat 7 Med. Ctr. v. HealthPlus Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) ("[W]e hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties."); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1465 (10th Cir. 1995) ("ERISA's silence on the issue of assignability of insurance benefits leaves the matter to the agreement of the contracting parties."); *Davidowitz v. Delta Dental Plan, Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991) ("The court concludes that ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan.").

In light of the foregoing, the Court has reviewed the anti-assignment provision and finds it to be clear, unambiguous, valid, and fully enforceable. As already noted, the anti-assignment provision does not allow assignment of benefits, or for that matter, the right to payment. Accordingly, the Patient's assignment of rights or benefits to Plaintiff is void. In the absence of a valid assignment from the Patient, Plaintiff lacks standing under ERISA to pursue *any* of the claims in this action. *See Univ. Spine Ctr. v. United Healthcare*, No. 17-8575, 2018 WL 4089061, at *3 (D.N.J. Aug. 27, 2018); *Univ. Spine Ctr. v. Highmark, Inc.*, No. 17-13660, 2018 WL 3993457, at *4 (D.N.J. Aug. 21, 2018); *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-8274, 2018 WL 3344237, at *3 (D.N.J. July 9, 2018); *Univ. Spine Ctr. v. Highmark, Inc.*, No. 17-11403, 2018 WL 2947859, at *3 (D.N.J. June 12, 2018); *Univ. Spine Ctr. o/a/o Edward C.*, 2018 WL 2357756, at *3; *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-7823, 2018 WL 2332226, at *3 (D.N.J. May 23, 2018); *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-13654, 2018 WL 1757027, at *3 (D.N.J. Apr. 12, 2018); *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-7825, 2017 WL 6514663, at *2 (D.N.J. Dec. 20, 2017); *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, No. 17-0193, 2017 WL 6372238, at *3 (D.N.J. Dec. 12, 2017); *Univ. Spine Ctr. v. Blue Shield of Cal.*, No. 17-8673, 2017 WL 5513688, at *3 (D.N.J. Nov. 16, 2017). This includes the claim against the Plan Administrator for failure to provide plan documents. *See* 29 U.S.C. 1132(c)(1) (requiring the administrator to provide plan documents only to "a participant or beneficiary").

## IV. Conclusion

For the foregoing reasons, Anthem's motion to dismiss is GRANTED, and Plaintiff's Complaint is dismissed *with prejudice*. Given the Court's ruling, the Court need not address the parties' alternative arguments. An appropriate order accompanies this Opinion.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**